530 So.2d 1218 (1988)
Mark A. GOODWIN, et al., Appellants,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, et al., Appellees.
No. 19708-CA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
*1219 Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for appellants.
Cook, Yancey, King & Galloway by Timothy B. Burnham, Shreveport, for appellees.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
On April 1, 1984, Gigi Goodwin was stopped at a red light when the car she was driving was rear-ended by a car driven by Erma Wenk. Gigi Goodwin and her husband, Mark, filed suit against Mrs. Wenk and her insurer for damages sustained by Mrs. Goodwin and their minor son, Ryan Goodwin, who was a passenger in the car. The parties stipulated that Mrs. Wenk was at fault in causing the accident, and the only issue was damages. After a trial the jury awarded Mark Goodwin, as administrator of the estate of Ryan Goodwin, $250.00,[1] and Gigi Goodwin $9,011.45. The trial judge denied plaintiffs' motion to tax as costs the $375.00 incurred for videotaping and replaying the depositions of two medical doctors. Plaintiffs appeal contending that:
(1) The general damages awarded Gigi Goodwin were abusively low; and
(2) The court erred in denying plaintiffs' motion to assign as costs the expenditures for videotaping and replaying two depositions introduced into evidence.
For the reasons expressed we amend and affirm.

ASSIGNMENT NO. 1
Before the jury's award may be characterized as inadequate or excessive the reviewing court must look to the facts and circumstances peculiar to this case and this individual. The initial inquiry is whether the jury's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion in the award of damages. Reck v. Stevens, 373 So.2d 498 (La. 1979).
Mrs. Goodwin first sought medical treatment April 2, 1984. Dr. Don Joffrion, her treating physician, testified that she was complaining of upper back and neck pains and hypersensitivity in the left arm and hand. Dr. Joffrion stated that the shoulder, neck and back pain was caused by a cervical spine strain which resulted from the accident. Mrs. Goodwin returned on *1220 April 10, with continued pain in the neck, shoulder, and arm. Dr. Joffrion diagnosed the pain in her arm as a stretch injury of the ulnar nerve at the elbow attributable to the accident. Mrs. Goodwin saw Dr. Joffrion again on June 26, 1984 for the pain in her neck, shoulders and left arm. Mrs. Goodwin became pregnant October 1984, and was treated by Dr. Hart during her pregnancy. Dr. Timothy Hart testified that the ulnar nerve injury was aggravated by her pregnancy, and did not improve at the conclusion of the pregnancy. He stated that if Mrs. Goodwin were to have another child, she could expect another exacerbation of the nerve injury, and that it could result in additional permanent damage. Mrs. Goodwin returned to Dr. Joffrion on September 4, 1985, by which time the neck and shoulder pain had dissipated but the arm had worsened. When Dr. Joffrion saw Mrs. Goodwin on November 8, 1985 he referred her to a neurologist, Dr. Kenneth Gaddis. Dr. Gaddis performed a nerve conduction study on Mrs. Goodwin which confirmed the diagnosis of an ulnar nerve injury. Dr. Joffrion testified that Mrs. Goodwin's ulnar nerve injury is a permanent one, which entails a 1 to 5% disability of her left arm.
Mrs. Goodwin, 35, has two children, ages 3 and 22 months. She has a BA in history, and works as manager of a travel agency. Mrs. Goodwin's job entails spending 8 hours a day at a computer keyboard, which she testified made the pain in her left arm increase. She continued to work in spite of the pain she suffered. Dr. Hart described Mrs. Goodwin as a stoic, who suffered without complaint. Mrs. Goodwin described the initial pain in her neck, back and shoulders as like a bad sunburn. This pain persisted until it resolved itself in October, 1984. The pain in her left arm goes from the elbow into the fingers. She described it as a constant irritation that worsened if her arm was exposed to air or cold, and at the end of the day. She stated that cold and wind make the pain worse, and she has been unable to continue a family sport, snow skiing. Dr. Joffrion testified that Mrs. Goodwin's complaints of increased pain in cold weather and while working at a computer were consistent with an ulnar nerve stretch injury. He stated that he believed Mrs. Goodwin's complaints of pain were real, and he did not think she was malingering. She had undergone little medical treatment because there was nothing that could be done for the nerve injury. Mrs. Goodwin said that she has trouble gripping large objects and holding her two children for long periods of time. Mr. and Mrs. Goodwin testified that they had planned to have a third child, but fear to because the arm might worsen again. The accident caused Mrs. Goodwin to suffer a cervical strain with attendant pain that lasted seven months, and a permanent 1-5% disability in her left arm.
The medical expenses for Mrs. Goodwin totaled $261.45, so the general damages award was $8,750.00. In light of Mrs. Goodwin's injuries and the attendant pain, suffering and permanent disability, we conclude that the jury's award of $8,750.00 in general damages was abusively low.
Now that we have determined that the jury abused its discretion in making an insufficient award, we look to prior awards in similar cases to determine the appropriate award for the present case, bearing in mind that we can only raise the insufficient award to the lowest point reasonably within the discretion afforded the trier of fact. Reck v. Stevens, supra; Greer v. Ouachita Coca-Cola Bottling Co., 420 So.2d 540 (La. App.2d Cir.1982). Our review of similar cases[2] shows that the lowest amount the jury could reasonably have awarded was $5,000 for the cervical strain and $7,000 for the permanent disability in her left arm. Therefore, we will amend the general damages award to $12,000.

*1221 ASSIGNMENT NO. 2
Plaintiffs incurred $375 in costs for the videotaping and replaying of the depositions of Dr. Hart and Dr. Dzurik. They contend that this expense is taxable as costs. LSA-C.C.P. art. 1440 allows the recording of depositions by other than stenographic means pursuant to court order. We note that in the pretrial order both plaintiffs and defendants specifically agreed that video depositions could be used without the necessity of a court order. Any objections the defendants had to assigning the expense of taking the depositions as costs should have been voiced at that time. When they consented to use of the media, they implicitly agreed it was an acceptable cost. The fee for recording the deposition was $300; for playing it back was $75. Since LSA-R.S. 13:4533 allows only the expenses for taking a deposition plaintiffs are entitled only to the charge incurred in taping the depositions. Plaintiffs concede in brief that if they are awarded the videotaping expenses, they cannot receive the $79.75 stenographic fee for taking those depositions. In accordance with our conclusions, we amend the pertinent parts of the judgment to read as follows:

* * * * * *
IT IS HEREBY ORDERED, ADJUDGED AND DECREED there be judgment herein in favor of plaintiff, GIGI GOODWIN, and against defendants, HARTFORD ACCIDENT & INDEMNITY COMPANY and ERMA B. WENK, in solido, in the full and true sum of TWELVE THOUSAND TWO HUNDRED SIXTY ONE AND 45/100 DOLLARS ($12,261.45), with legal interest thereon from date of judicial demand until paid;

* * * * * *
IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED plaintiffs' costs of THREE HUNDRED DOLLARS ($300.00), for videotaping the depositions of Dr. Timothy M. Hart and Dr. Gerald A. Dzurik, be and hereby are taxed as costs;
and that part of the judgment which reads:
IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED plaintiffs' costs of SEVENTY-NINE AND 75/100 DOLLARS ($79.75), for the stenographer's fee for the transcripts of the depositions of Dr. Timothy M. Hart and Dr. Gerald A. Dzurik, be and hereby are taxed as costs;
is stricken.
As amended the lower court judgment is affirmed. Costs of this appeal are assessed to the appellee.
AMENDED AND AFFIRMED.
NOTES
[1] Mark Goodwin's award was increased by $20 pursuant to the defendants' motion to correct the judgment, which had erroneously omitted medical expenses paid by Mr. Goodwin for Ryan.
[2] Anderson v. Safeco Ins. Co., 396 So.2d 322 (La.App.2d Cir.1981): Mrs. Anderson's hand was fractured and she sustained a 7½% to 12½% disability in her hand. She was awarded $7,000.

Dickson v. State Farm Ins. Agency, 396 So.2d 514 (La.App.3d Cir.1981): Calvin Blanco was awarded $7,500 general damages for the 4% permanent impairment of the wrist.
Tindall v. Kampen, 492 So.2d 1274 (La.App. 4th Cir.1986): Mrs. Tindall was involved in an automobile accident that resulted in a cervical and lumbro-sacral sprain. She received medical care for approximately eight months. Her award of $5,100 for pain and suffering was upheld on appeal.
Rachal v. Agudosi, 496 So.2d 1274 (La.App.3d Cir.1986): After being involved in a minor rearend collision, Mrs. Rachal suffered soft tissue injuries to the neck area and was recovered in seven weeks. The appellate court reduced her award to $7,000. Mrs. Hamilton, a passenger, suffered a mild cervical strain. Her award was reduced to $10,000.
Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App.2d Cir.1986): Mrs. Davis suffered strains of the cervical and lumbar spine following an automobile accident, for which she was awarded $3,500 in general damages. She also suffered from carpal tunnel syndrome in both wrists, which might require surgery, resulting in 10% disability in each wrist. She was awarded $16,000 general damages.